UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------------X
RASHEEDAH BROWN,

                    Plaintiff,

      - against -

P.O. EDWANNA JOHNSON, Shield No. 19002,
P.O. JOHN FROEHLICH, Shield No. 00333,
P.O. CHERA VOELS, Shield No. 2480,
P.O. CHRISTINA MEEHAN, Shield No. 25688,
SERGEANT "JOHN DOE," THE CITY OF NEW YORK
and ERNST JEAN JABOUIN,

                  Defendants.
-----------------------------------------------------------------------------X

14 CV 6483 (MKB) (RLM)

AMENDED
COMPLAINT AND
JURY TRIAL DEMAND

      Plaintiff, RASHEEDAH BROWN, by her attorney, ALAN D. LEVINE, ESQ., complaining of the defendants herein, respectfully alleges as follows:

## JURISDICTION

      1.     This is a civil action, seeking compensatory damages, punitive damages and attorney's fees.

      2.     This action is brought pursuant to 42 U.S.C. §§1983 and 1988 and the fourth and fourteenth amendments to the Constitution of the United States.

      3.     Jurisdiction is founded upon 28 U.S.C. §§1331, 1343 and 1367.

      4.     Plaintiff, invoking the supplemental jurisdiction of this Court, also seeks compensatory and punitive damages for false arrest and malicious prosecution.

## VENUE

      5.     Venue is properly alleged in the Eastern District of New York in that the acts complained of herein occurred within this District.

## JURY TRIAL DEMAND

6.     Plaintiff hereby demands a trial by jury of all issues in this action that are so triable.

## PARTIES

7.     At all times relevant hereto, plaintiff, RASHEEDAH BROWN, was and is a natural person, resident in the County of Queens, City and State of New York.

8.     At all times relevant hereto, defendant P.O. EDWANNA JOHNSON, Shield No. 19002 (hereinafter "JOHNSON") was and is a natural person, employed as a police officer by the Police Department of defendant CITY OF NEW YORK.

9.     At all times relevant hereto, defendant P.O. JOHN FROEHLICH, Shield No. 00333 (hereinafter "FROEHLICH") was and is a natural person, employed as a police officer by the Police Department of defendant CITY OF NEW YORK.

10.     At all times relevant hereto, defendant P.O. CHERA VOELS, Shield No. 2480 (hereinafter "VOELS") was and is a natural person, employed as a police officer by the Police Department of defendant CITY OF NEW YORK.

11.     At all times relevant hereto, defendant P.O. CHRISTINA MEEHAN, Shield No. 25688 (hereinafter "MEEHAN") was and is a natural person, employed as a police officer by the Police Department of defendant CITY OF NEW YORK.

12.     At all times relevant hereto, defendant SERGEANT "JOHN DOE" (hereinafter "DOE") was and is a natural person, employed as a sergeant by the Police Department of defendant CITY OF NEW YORK.

13.     At all times relevant hereto, defendant CITY OF NEW YORK was and is a municipal corporation, organized and existing pursuant to the laws of the State of New York.

14.     At all times relevant hereto, defendant ERNST JEAN JABOUIN (hereinafter "JABOUIN") was and is a natural person, residing at 138-23 250th Street, Rosedale, County of Queens, City and State of New York.

15.     The individual defendants are sued in their individual capacities.

16.     On or about February 11, 2014, this date being within ninety (90) days after the claims herein sued upon accrued, plaintiff served upon the Comptroller of the City of New York a verified written notice of claim setting forth the time, place, nature and manner in which said claim arose.

17.     More than thirty (30) days have elapsed since the aforementioned verified notice of claim was served and the Comptroller has neglected and refused to make payment of said claim.

18.     This action is commenced within one year from the date the causes of action herein accrued.

### AS AND FOR A FIRST CAUSE OF ACTION
### AGAINST DEFENDANTS JOHNSON,
### <u>FROEHLICH, VOELS, MEEHAN and DOE</u>
### (42 U.S.C. §1983)

19.     Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs "1" through "18" hereinabove as if more fully set forth at length herein.

20.     Plaintiff is an owner in fee of the premises 138-28 250th Street, Rosedale, County of Queens, City and State of New York (hereinafter "subject premises"), which at all times relevant hereto was and is her residence.

21.     Plaintiff is employed by the Department of Education of the City of New York as a tenured guidance counselor.

22.    On or about November 14, 2013, plaintiff was at home at the subject premises.

23.    On the aforementioned date, and for a period of time prior thereto, plaintiff was on medical leave from her employment, with bed rest prescribed, because she was expecting twins and was in the seventh month of a high-risk pregnancy.

24.    At or about 9:00 A.M. on the aforementioned date, plaintiff was alone in her kitchen, peeling potatoes she intended to cook for her breakfast, when she heard a commotion outside.

25.    Plaintiff went to the one of the windows of her house and looked out, whereupon she observed a gentleman named Oscar Guevara, whom she employs as a landscaper, engaged in a heated discussion with defendant JABOUIN.

26.    Defendant JABOUIN and Mr. Guevara were on plaintiff's front lawn.

27.    Mr. Guevara had been using a leaf blower to clear leaves from plaintiff's front lawn.

28.    Plaintiff heard defendant JABOUIN yelling and cursing at Mr. Guevara, accusing him of purposely blowing leaves from plaintiff's lawn onto the lawn of his residence, which is located across the street from the subject premises.

29.    Plaintiff called out to defendant JABOUIN, "Calm down. It's early in the morning. What are you arguing for?"

30.    Defendant JABOUIN replied, "Shut the fuck up."

31.    Plaintiff assured defendant JABOUIN that any leaves blown onto his property would be cleaned up.

32.    However, defendant JABOUIN shouted back at plaintiff, "I know what he's doing. He's trying to dirty up my house."

33.   Both Mr. Guevara and two employees who he had helping him with his landscaping duties told defendant JABOUIN that they would clean up any leaves blown onto his property before they left.

34.   Defendant JABOUIN's response was to push Mr. Guevara, spit on him and tear the strap on his leaf blower.

35.   Plaintiff, wearing only her fiancé's sweatpants and t-shirt and a pair of her own flip flops, went outside.

36.   Plaintiff was still holding in her hand the potato peeler she had been using to make breakfast with.

37.   Plaintiff asked defendant JABOUIN to get off her lawn and go back to his side of the street.  She reassured him that her landscaper would clean up any mess that he had made.

38.   Defendant JABOUIN accused plaintiff of being in possession of a knife.

39.   Not only was plaintiff not in possession of a knife, but she did not wield the potato peeler in a threatening manner.  Rather, it was pointed down as she spoke to defendant JABOUIN.

40.   Declaring that he would call the police, Defendant JABOUIN went back across the street and entered his house.

41.   Plaintiff replied that she was going to call the police, went back into her house, telephoned her fiancé and then called 911.

42.   Very shortly thereafter, approximately five marked New York City Police Department motor vehicles, with defendants JOHNSON, FROEHLICH, VOELS, MEEHAN and DOE inside, arrived in front of plaintiff's house, sirens blaring.

43.     Looking through her storm door, plaintiff observed several of the police officer defendants hereto speaking to defendant JABOUIN for between three to five minutes.

44.     Plaintiff was not able to hear any of the conversation among the aforementioned parties.

45.     The aforementioned police officer defendants now walked across the street toward plaintiff's house.

46.     As the aforementioned police officer defendants crossed the street, Mr. Guevara attempted to speak to them so as to tell them what had happened, including his having been assaulted by defendant JABOUIN.

47.     The aforementioned defendants responded by telling Mr. Guevara to get into his truck, assuring him that they would speak to him later.

48.     However, none of the police officer defendants ever spoke to Mr. Guevara to learn from him what had happened in the incident.

49.     The aforementioned police officer defendants now came over to the subject premises.

50.     Plaintiff came out in front of her house to speak to the aforementioned defendants.

51.     One of the aforementioned defendants asked plaintiff if she owned a knife.

52.     Plaintiff responded that she had several knives in her kitchen.

53.     However, she also informed these defendants that when she was out in the street attempting to calm defendant JABOUIN, all she was holding was a potato peeler.

54.     Because she was starting to feel cold, plaintiff asked if she could go inside her home to get a jacket.

55.     The aforementioned defendants told her she could, but defendants VOELS, JOHNSON and MEEHAN followed her into her house.

56.     Defendant JOHNSON now informed plaintiff that defendant DOE had directed that she be arrested and placed her under arrest.

57.     Plaintiff was asked where the knife that she had been accused of having was.

58.     Plaintiff responded that she had put the potato peeler back into a kitchen drawer when she had come inside to call 911.

59.     Without either obtaining permission from plaintiff or obtaining a search warrant, upon information and belief, defendant VOELS opened at least one of plaintiff's kitchen drawers and started going through it.

60.     Upon information and belief, defendant VOELS reached into the open drawer and took possession of one of the knives that was in it, without bothering to ascertain whether or not it was the object that plaintiff had been holding in her hand when she had gone outside to speak to defendant JABOUIN.

61.     The knife that the defendant took was not the potato peeler that plaintiff had been holding.

62.     One of the aforementioned defendants ordered plaintiff to stand up and put her hands behind her back so that she could be rear-handcuffed.

63.     Plaintiff offered to show the aforementioned defendants her medical records and requested that she not be rear-handcuffed, as the physical position that that would put her in would place undue pressure on the two fetuses she was carrying.

64.    Plaintiff was told by one or more of the aforementioned defendants that she could not get her medical records.

65.    As plaintiff was not wearing any underwear, she asked the aforementioned defendants if she could at least put some on before she was taken to the stationhouse.

66.    One of the aforementioned defendants responded, "Don't worry about it. It's warm in the car and the precinct."

67.    Plaintiff was rear-handcuffed by one of the aforementioned defendants.

68.    Plaintiff was taken outside of her house in full view of several of her neighbors.

69.    Plaintiff was placed into the rear seat of a Police Department motor vehicle, that was, upon information and belief, operated by defendant FROEHLICH.

70.    Because of her fear of doing harm to the two babies she was carrying, plaintiff asked defendant FROEHLICH if he could front cuff her or cuff her to the grate that separated the front and rear seats in his vehicle.

71.    Defendant FROEHLICH responded, "That's protocol. I'm not going to lose my job for your dumb shit."

72.    Plaintiff now pointed out to defendants FROEHLICH and VOELS that they had left her house open.

73.    Defendant VOELS volunteered to go inside the house to get plaintiff's keys.

74.    However, once inside plaintiff's house, defendant VOELS not only obtained plaintiff's keys but improperly and illegally opened plaintiff's wallet and removed her driver's license from it.

75.     Plaintiff was driven to the stationhouse of the 105th Precinct.

76.     While she was in the stationhouse, two of the police officer defendants cut the drawstring on the sweatpants plaintiff was wearing, causing them to fall all the way to the floor.

77.     Plaintiff was also forced to stand for twenty to thirty minutes, waiting to be fingerprinted, because the fingerprint machine in the stationhouse was not operating properly.

78.     Plaintiff asked if she could be put in a chair that she would be cuffed to.

79.     She was not.

80.     Plaintiff was issued desk appearance tickets by defendant JOHNSON, charging her with menacing in the second degree, a class A misdemeanor, and harassment in the second degree, a violation.

81.     As a result of her arrest, plaintiff was informed by her employer that she would not be able to go back to work until the charges against her were resolved and a hearing was held.

82.     On or about June 18, 2014, all the charges made against plaintiff were dismissed in Criminal Court of the City of New York, County of Queens.

83.     In its written decision dismissing the information against plaintiff, the Criminal Court held that the information failed to provide reasonable cause to believe that she had committed either of the offenses charged.

84.     Defendants JOHNSON, FROEHLICH, VOELS, MEEHAN and DOE violated plaintiff's rights, guaranteed to her by the fourth and fourteenth amendments to the Constitution of the United States, to be arrested only with probable cause and to be secure in her house and personal effects against unreasonable searches in that, acting

under color of state law, they, without any cause or provocation whatsoever, falsely and maliciously arrested plaintiff and searched her home without a proper warrant.

85.     Because of the aforementioned acts committed against her by defendants JOHNSON, FROEHLICH, VOELS, MEEHAN and DOE, plaintiff suffered a deprivation of the aforementioned rights guaranteed to her by the fourth and fourteenth amendments to the Constitution of the United States and, as a result, suffered a loss of her liberty and of the security of her home, was forced to defend herself in a criminal proceeding, was embarrassed and humiliated in front of her neighbors, had her employment placed in jeopardy, suffered an exacerbation of pre-existing medical problems arising from her pregnancy, incurred legal expenses for both a criminal defense attorney and an attorney to represent her in proceedings initiated by her employer, and suffered extreme mental anguish.

86.     By reason of the aforementioned unconstitutional and illegal actions taken against her by defendants JOHNSON, FROEHLICH, VOELS, MEEHAN and DOE, plaintiff has been damaged in an amount sufficient to compensate her for her injuries as enumerated hereinabove and, in addition, seeks punitive damages against defendants JOHNSON, FROEHLICH, VOELS, MEEHAN and DOE, both amounts to be determined at the trial of this action.

## AS AND FOR A SECOND CAUSE OF ACTION
## AGAINST DEFENDANTS JOHNSON,
## VOELS and MEEHAN
## (Trespass)

87.     Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs "1" through "86" hereinabove as if more fully set forth at length herein.

88.     At all times relevant hereto, plaintiff was an owner of the premises 138-28 250th Street, Rosedale, County of Queens, City and State of New York.

89.     On or about November 13, 2013, at approximately 9:00 A.M., defendants JOHNSON, VOELS and MEEHAN entered into and upon the aforementioned premises without having either plaintiff's permission or a warrant authorizing them to do so and, upon information and belief, defendant VOELS improperly conducted searches of at least one of plaintiff's kitchen drawers and of plaintiff's wallet.

90.     At the time that defendants JOHNSON, VOELS and MEEHAN committed the aforementioned trespasses, they were acting within the scope of their employment by defendant CITY OF NEW YORK.

91.     By reason of the aforementioned trespass committed against her and her dwelling and property by defendants JOHNSON, VOELS and MEEHAN, while they were acting within the scope of their employment by defendant CITY OF NEW YORK, plaintiff suffered a deprivation of the enjoyment of her dwelling and the security therein that she was and is entitled to.

92.     As a result of the trespass committed against her, her dwelling and her personal property by defendants JOHNSON, VOELS and MEEHAN, while they were acting within the scope of their employment by defendant CITY OF NEW YORK, plaintiff

has been damaged in an amount sufficient to compensate her for her injuries as enumerated hereinabove and, in addition, seeks punitive damages against defendants JOHNSON, VOELS and MEEHAN, both amounts to be determined at the trial of this action.

## AS AND FOR A THIRD CAUSE OF ACTION
## AGAINST DEFENDANTS JOHNSON, DOE
## AND THE CITY OF NEW YORK
### (False Arrest)

93.     Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs "1" through "92" hereinabove as if more fully set forth at length herein.

94.     On or about November 14, 2013, at approximately 9:00 A.M., at the subject premises, defendant JOHNSON, acting at the direction of defendant DOE, without either one having probable cause therefor, forcibly, wrongfully and unlawfully arrested plaintiff, and, against plaintiff's own free will, caused her to be incarcerated.

95.     Defendants JOHNSON and DOE falsely, maliciously, wrongfully, unlawfully and illegally accused plaintiff of having committed the crime of menacing in the second degree and the offense of harassment in the second degree.

96.     Plaintiff was falsely, maliciously, wrongfully, unlawfully and illegally kept in confinement in a New York City Police Department motor vehicle and at the stationhouse of the 105th Precinct.

97.     At the time they committed the aforesaid acts of false arrest and false imprisonment, defendants JOHNSON and DOE were acting within the scope of their employment by defendant CITY OF NEW YORK.

98.     By reason of the false arrest and false imprisonment committed against her by defendants JOHNSON and DOE, while they were acting within the scope of their employment by defendant CITY OF NEW YORK, plaintiff suffered a loss of her liberty, was forced to defend herself in a criminal proceeding, was embarrassed and humiliated in front of her neighbors, had her employment placed in jeopardy, suffered an exacerbation of pre-existing medical problems arising out of her pregnancy, incurred legal expenses for both a criminal defense attorney and an attorney to represent her in proceedings initiated by her employer, and suffered extreme mental anguish.

99.     As a result of the aforementioned acts of false arrest and false imprisonment committed against her by defendants JOHNSON and DOE, while they were acting within the scope of their employment by defendant CITY OF NEW YORK, plaintiff has been damaged in an amount sufficient to compensate her for her injuries as enumerated hereinabove and, in addition, seeks punitive damages against defendants JOHNSON and DOE, both amounts to be determined at the trial of this action.

## AS AND FOR A FOURTH CAUSE OF ACTION
## AGAINST DEFENDANT JABOUIN
### (False Arrest)

100.    Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs "1" through "99" hereinabove as if more fully set forth at length herein.

101.    On or about November 14, 2013, at approximately 9:00 A.M., defendant JABOUIN instigated plaintiff's arrest by making false statements to a 911 operator and to certain of the individual police officer defendants hereto.

102.    Specifically, defendant JABOUIN falsely and maliciously accused plaintiff of approaching him and threatening him with a knife.

103.  At the time that defendant JABOUIN made the aforementioned false statements to the 911 operator and certain of the individual defendants hereto, he maliciously made them with knowledge that they were false and with the intention of having plaintiff placed under arrest.

104.  At the time he made the aforementioned false and malicious statements with regard to plaintiff, defendant JABOUIN had no reasonable cause for believing them to be true.

105.  Solely as a result of the aforementioned false statements made by defendant JABOUIN to the 911 operator and certain of the individual defendants hereto, made by him with the improper intention of having plaintiff arrested and confined, plaintiff was arrested and confined.

106.  As a result of the false arrest procured as hereinabove described by defendant JABOUIN, plaintiff suffered a loss of her liberty, was forced to defend herself in a criminal proceeding, was embarrassed and humiliated in front of her neighbors, had her employment placed in jeopardy, suffered an exacerbation of pre-existing medical problems arising out of her pregnancy, incurred legal expenses for both a criminal defense attorney and an attorney to represent her in proceedings initiated by her employer, and suffered extreme mental anguish.

107.  As a result of the aforementioned act of false arrest, procured as hereinabove described by defendant JABOUIN, plaintiff has been damaged in an amount sufficient to compensate her for her injuries as enumerated hereinabove and, in addition, seeks punitive damages against defendant JABOUIN, both amounts to be determined at the trial of this action.

## AS AND FOR A FIFTH CAUSE OF ACTION
## AGAINST DEFENDANT JABOUIN
### (Malicious Prosecution)

108.   Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs "1" through "107" hereinabove as if more fully set forth at length herein.

109.   On or about November 14, 2013, at approximately 9:00 A.M., defendant JABOUIN caused desk appearance tickets to be issued to plaintiff, charging her with menacing in the second degree, a class A misdemeanor, and harassment in the second degree, a violation, and caused criminal proceedings to be commenced against her for those two offenses.

110.   At the time he caused the aforementioned criminal proceedings to be commenced against plaintiff, defendant JABOUIN did so (a) without any probable cause to do so and (b) solely out of malice directed against plaintiff.

111.   At the aforementioned time and place, defendant JABOUIN maliciously and intentionally gave false information to certain of the individual police defendants hereto, knowing such information to be false.

112.   Namely, defendant JABOUIN falsely and maliciously accused plaintiff of having approached him and having threatened him with a knife.

113.   On or about June 18, 2014, the prosecution maliciously commenced against plaintiff by defendant JABOUIN was dismissed by a judge of the Criminal Court of the City of New York.

114.   As a result of the prosecution maliciously commenced against her by defendant JABOUIN, plaintiff suffered a loss of her liberty, was forced to defend herself in a criminal proceeding, was embarrassed and humiliated in front of her neighbors, had

her employment placed in jeopardy, suffered an exacerbation of pre-existing medical problems arising out of her pregnancy, incurred legal expenses for both a criminal defense attorney and an attorney to represent her in proceedings imitated by her employer, and suffered extreme mental anguish.

115.   As a result of the aforementioned act of malicious prosecution, caused as hereinabove described by defendant JABOUIN, plaintiff has been damaged in an amount sufficient to compensate her for her injuries as enumerated hereinabove and, in addition, seeks punitive damages against defendant JABOUIN, both amounts to be determined at the trial of this action.

WHEREFORE, plaintiff, RASHEEDAH BROWN, demands judgment against defendants, P.O. EDWANNA JOHNSON, Shield No. 19002, P.O. JOHN FROEHLICH, Shield No. 00333, P.O. CHERA VOELS, Shield No. 2480, P.O. CHRISTINA MEEHAN, Shield No. 25688, SERGEANT "JOHN DOE," THE CITY OF NEW YORK and ERNST JEAN JABOUIN, as follows:

FIRST CAUSE OF ACTION:      An amount sufficient to compensate her for her injuries as enumerated hereinabove and, in addition, seeks punitive damages against defendants JOHNSON, FROEHLICH, VOELS, MEEHAN and DOE, both amounts to be determined at the trial of this action;

SECOND CAUSE OF ACTION:   An amount sufficient to compensate her for her injuries as enumerated hereinabove and, in addition, seeks punitive damages against defendants JOHNSON, VOELS and MEEHAN, both amounts to be determined at the trial of this action;

THIRD CAUSE OF ACTION:      An amount sufficient to compensate her for her injuries as enumerated hereinabove and, in addition, seeks punitive damages against

defendants JOHNSON and DOE, both amounts to be determined at the trial of this action;

FOURTH CAUSE OF ACTION:   An amount sufficient to compensate her for her injuries as enumerated hereinabove and, in addition, seeks punitive damages against defendant JABOUIN, both amounts to be determined at the trial of this action; and

FIFTH CAUSE OF ACTION:   An amount sufficient to compensate her for her injuries as enumerated hereinabove and, in addition, seeks punitive damages against defendant JABOUIN, both amounts to be determined at the trial of this action.

In addition, plaintiff demands the costs and disbursements of this action, including her attorney's fees, pursuant to 42 U.S.C. §1988.

Dated:  Kew Gardens, New York
        March 25, 2015

ALAN D. LEVINE, ESQ.
Attorney for Plaintiff
80-02 Kew Gardens Road, Suite 302
Kew Gardens, New York 11415
(718) 793-6363
Our File No:  2289